UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TERESA H. HARLOW, | : | Case No. 3:10-cv-242 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

## DECISION AND ENTRY: (1) THE ALJ'S NON-DISABILITY FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS AFFIRMED; AND (2) THIS CASE IS CLOSED

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore not entitled to disability insurance benefits ("DIB"). (*See* Administrative Transcript ("Tr.") 27).

## I. BACKGROUND

Plaintiff protectively filed an application for DIB on November 16, 2004, alleging she became disabled on May 28, 2003, as a result of psychological problems and diabetes and associated ailments. (Tr. 55-57). Her application was denied initially and on reconsideration. (Tr. 34-6, 38-40). Plaintiff timely requested a *de novo* review of her claims by an ALJ. (Tr. 41) ALJ Melvin A. Padilla presided over a hearing on the matter on July 16, 2008. (Tr. 1504-40). Plaintiff, represented by counsel, and a vocational

expert appeared and testified. (*Id.*).

On September 14, 2008, the ALJ released a decision finding Plaintiff not disabled and therefore not entitled to benefits. (Tr. 13-27). Plaintiff sought the Appeals Council's review, which was denied on April 28, 2010, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-8). Plaintiff thereafter brought this action in federal court under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying her DIB.

The ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2008.

2. The claimant has not engaged in substantial gainful activity since May 28, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following "severe" impairments: 1) diabetes with a history of non-compliance with treatment; 2) obesity with residuals of gastric banding surgery; and [3)] depression with anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) featuring: 1) lifting twenty[-]five pounds frequently and fifty pounds occasionally; 2) alternating positions every twenty-to-thirty minutes; 3) inside work in a temperature-controlled environment; 4) no climbing of ladders, scaffolds or heights; 5) low stress jobs with no fast-paced work and no dealing with the public; 6) simple repetitive tasks; and 7) minimal contacts with supervisors and co-workers.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 31, 1966 and was thirty[-]six years old and defined as a younger individual on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and some college and is able to communicate in English (20 CFR 404.1564).

9. In view of the claimant's vocational profile and residual functional capacity, transferability of job skills is not material to the determination of disability (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimants has not been under a disability, as defined in the Social Security Act, from May 28, 2003 through the date of this decision (20 CFR 404.1520(g)).

Plaintiff makes two arguments on appeal: (1) that the ALJ erred in formulating Plaintiff's residual functional capacity ("RFC") when Plaintiff's treating psychiatrist found a disabling mental impairment; and (2) that the ALJ erred in evaluating Plaintiff's credibility regarding her symptoms. Each assignment of error will be addressed in turn.

## II. LEGAL FRAMEWORK

The Court's task on appeal is to determine whether the ALJ employed the correct legal criteria and whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In this undertaking, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The ALJ must also apply the correct legal standards and follow the Commissioner's regulations. Failure to do so will usually result in reversal, even when the ALJ's opinion is supported by substantial evidence. *Bowen,* 478 F.3d at 746.

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to DIB. 20 CFR § 404.1512. She must present sufficient evidence to show that, during the relevant time period, she was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## A. First Assignment of Error

For her first assignment of error, Plaintiff argues that the ALJ erred in finding that Plaintiff was not disabled when Plaintiff's treating psychiatrist opined that Plaintiff could not work on a sustained basis in a competitive environment. To the extent that the opinion asserted that Plaintiff was disabled, the ALJ refused to grant Dr. Houseknecht's opinion controlling or even deferential weight.

The ALJ must weight a treating physician's opinion in accordance with 20 CFR § 404.1527. In general, the opinion of a treating physician is given greater weight than that of a non-treating physician. 20 CFR § 404.1527(d)(1). This is because treating physicians:

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2).

The ALJ must give controlling weight to a treating physician's opinion if he finds it "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinion does not meet these requirements, however, the ALJ's task is not complete; the ALJ must still determine the weight the opinion deserves by applying certain factors found in 20 CFR § 404.1527(d)(2)-(6), namely: the length of the treatment relationship

and the frequency of examination; the extent of the treatment relationship; the nature and extent of the relevant evidence that the treating physician presents supporting his opinion; the consistency of the opinion with the record as a whole; the treating physician's specialization; and any other factor the claimant presents that tends to support or contradict the opinion.

Moreover, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p. This rule compels an ALJ to explain his decision to a lay claimant who may not understand why she is being denied disability when her own doctor believes her to be disabled. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*

It is a basic principle of administrative law that an agency must follow its own regulations. *Id.* at 545.

> Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242-3 (6th Cir. 2007). "Consistent with this principle, courts have remanded the Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source, as [20 CFR § 404.1527(d)(2)] requires." *Wilson* at 545.

Plaintiff argues that Dr. Houseknecht's opinion deserved controlling weight because it is both consistent with the record and supported by clinical findings. Plaintiff recounts Dr. Houseknecht's treatment relationship with Plaintiff, which began in January 2008. In the three preceding years, Plaintiff was treated at the United States Air Force's psychiatric care clinic at Wright Patterson Air Force Base. At her initial examination on January 2, 2008, Dr. Houseknecht found Plaintiff functioning "below average," her affect dysphoric, and her concentration fair. (Tr. 1494). Dr. Houseknecht diagnosed major depressive disorder, recurrent with psychotic features. (Tr. 1495). She assigned Plaintiff a GAF score of 45, denoting a serious impairment, and adjusted Plaintiff's medications. (*Id.*). Dr. Houseknecht referred Plaintiff to a counselor, Mr. Adkins, whom she began seeing monthly. (Tr. 1465-85).

On June 25, 2008, Dr. Houseknecht completed a supplemental questionnaire. Dr. Houseknecht marked that Plaintiff's psychological ailments created moderate, "moderately-severe," or nonexistent limitations on her various abilities, though from the face of the document, Dr. Houseknecht appears to have vacillated on multiple categories. (Tr. 1496-98). The only limitation she judged to be severe was Plaintiff's ability to complete a normal work week, performing at a consistent pace without unreasonable rest

periods. (Tr. 1498). She diagnosed Plaintiff's condition as major depression disorder and post-traumatic stress disorder and considered her prognosis fair if compliant with medication and therapy. (*Id.*).

Though the ALJ failed even to cite the 404.1527(d)(2) factors, the ALJ appears to have correctly employed them in discounting Dr. Houseknecht's opinion. The ALJ identified a crucial (and glaring) inconsistency in the opinion: Dr. Houseknecht rated Plaintiff's impairments either moderate to moderately severe in basically every category, yet she ultimately considered Plaintiff disabled. (Tr. 25). "Overall," the ALJ wrote, "the opinion of Dr. Houseknecht must be viewed as compatible with low stress, simple work activity with minimal personal contacts, or at worst, internally inconsistent in terms of supporting a disability claim." (*Id.*). Importantly, the ALJ appears to have given Dr. Houseknecht's opinion substantial, perhaps even controlling, weight, if her ultimate conclusion is discounted and only the remaining opinion is accepted, which seems an appropriate way to untangle the manifest ambiguity in the opinion. (*Id.*).

Plaintiff argues that Dr. Houseknecht's opinion was consistent with and supported by the treatment files from the hospital at Wright Patterson and those of examining psychologist Dr. Boerger. The ALJ reviewed Dr. Boerger's opinion and found that he described mainly mild-to-moderate limitations, which is in line with the ALJ's RFC formulation. As with Dr. Houseknecht's opinion, to a large extent the ALJ included Dr. Boerger's opinion in his analysis. The only portion the ALJ jettisoned was Dr. Boerger's

assessment that Plaintiff had a marked restriction in stress tolerance and a GAF of 50. In doing so, the ALJ provided clear reasoning: that the severe restriction in stress tolerance was not supported by the clinical evidence and that the medical record shows mostly moderate GAF scores. (Tr. 24).

The ALJ's decision regarding Dr. Houseknecht's opinion was proper and is supported by substantial evidence. To a large extent, the ALJ did grant Dr. Houseknecht's opinion controlling weight, since the RFC determination corresponds closely to the limitations Dr. Houseknecht described. But not only did the record not justify a disability finding, the ALJ correctly noted that Dr. Houseknecht's own assessment actually failed to as well. In addition, Dr. Houseknecht had barely any treatment relationship with Plaintiff prior to rendering her opinion, vitiating a key rationale behind the rule giving primacy to treating physician opinion. *See supra* 20 CFR § 404.1527(d)(2). The ALJ's decision to grant the major share of Dr. Houseknecht's opinion significant weight while discounting her unsupported, discordant conclusion was appropriate, and it is affirmed.

### B. Second Assignment of Error

For her second assignment of error, Plaintiff argues that the ALJ erred in assessing her credibility regarding the severity of her symptoms, which Plaintiff asserts is substantiated by evaluating and treating sources. In particular, Plaintiff maintains that the ALJ failed to properly account for the severity of her diabetic neuropathy. The ALJ

recognized that Plaintiff experienced some diabetic neuropathy. (*See* Tr. 20, 24). However, Plaintiff contends that the ALJ did not correctly recognize its severity. Plaintiff argues that the ALJ's miscalculation of the degree to which Plaintiff experienced diabetic neuropathy infected his analysis of Plaintiff's credibility.

Contrary to Plaintiff's argument, the ALJ considered Plaintiff's neuropathy to be a severe physical impairment. To wit, the ALJ wrote: "[t]he combination of poorly controlled diabetes associated with some subjective neuropathy, obesity and residuals of bariatric surgery reasonably affect her strength, balance and tolerance for certain environmental irritants. Therefore, these physical impairments are 'severe.'" (Tr. 20). Consequently, the ALJ also took Plaintiff's neuropathy into account in formulating Plaintiff's RFC, including "environmental and postural restrictions [to] accommodate any possible mild diabetic neuropathy." (Tr. 24).

Plaintiff argues that the ALJ's determination that Plaintiff had only mild symptoms was somehow wrong, but cites little to nothing showing that her symptoms were more aggravated. Plaintiff identifies evidence that various medical professionals termed her diabetes "brittle," and that doctors believed neuropathy was the culprit behind the loss of sensation in her feet and a fainting spell requiring hospitalization. Yet the ALJ and the Commissioner cited many contrary findings establishing that Plaintiff "retain[ed] normal strength in all extremities, and normal gait and stance." (Tr. 24 (citations omitted)). These include the opinions of examining physician Dr. Oza and Dr. Hendricks (Tr. 152-

56, 1334) and many hospital and doctor's records (Tr. 395, 480, 520, 1027-28, 1038, 1045-46, 1153, 1190, 1242). The voluminous record included much evidence that Plaintiff's neuropathy was mild at best, and the ALJ's accommodation of this ailment in his RFC formulation was, if anything, deferential to Plaintiff. His decision, in short, was supported by substantial evidence. Because the ALJ properly assessed Plaintiff's symptoms and her credibility, his decision is affirmed.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision that Plaintiff was not entitled to disability insurance benefits and a period of disability beginning May 28, 2003 is supported by substantial evidence, and it is **AFFIRMED**. As no further matters remain pending for the Court's review, this case is closed.

**IT IS SO ORDERED.**

Date: 7/6/11

Timothy S. Black
United States District Judge